UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JOSHUA BLANCHARD, | CASE NO. 1:22-cv-00539 |
| Plaintiff, | HON. Robert J. Jonker<br>U.S. District Court Judge |
| v. | |
| EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS, | HON. Phillip J. Green<br>U.S. Magistrate Judge |
| Defendant. | |

**<u>DECLARATION OF AUBORN FINNEY</u>**

I, Auborn Finney, declare the following under 28 U.S.C. § 1746:

1. I am currently employed as an Attorney-Advisor with the Freedom of Information Act/Privacy Act staff of the Executive Office for United States Attorneys ("EOUSA"), United States Department of Justice ("DOJ"). I have been employed in this capacity since October 2019. Prior to my current position with EOUSA, I worked as the FOIA Program Manager at the Department of Energy and FOIA Team Lead with the Department of Commerce in the Bureau of International Trade Administration. I processed all phases of FOIA and Privacy Act requests including appeals and litigation.

2. As an attorney with EOUSA, I work as a liaison among other divisions and offices of DOJ, providing advice on responding to requests for access to information located in this and the other 93 districts of the United States Attorneys' Offices. Further, I review the adequacy of searches conducted in response to requests and FOIA determinations made by EOUSA staff to ensure that the processing of records and determinations to disclose or withhold

responsive records are made in accordance with FOIA, Privacy Act, and DOJ regulations at 28 C.F.R. § 16.3 *et. seq.* and § 16.40 *et seq.*, and pursuant to 5 U.S.C. § 552 and 5 U.S.C. § 552a.

3. Due to the nature of my responsibilities, I am familiar with the procedures followed by this office in responding to the FOIA requests submitted to EOUSA by Joshua Blanchard (Plaintiff). Additionally, I have reviewed the complaint that is the basis of the lawsuit and which this declaration addresses.

4. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity as an Attorney-Advisor, and upon conclusions and determinations reached and made in accordance therewith.

5. The purpose of this declaration is to provide the Court with information regarding EOUSA efforts to respond to Plaintiff's FOIA request. In accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) and the Court's March 14, 2023, Order (PageID.94), Defendant submits this declaration along with the accompanying *Vaughn* Index, attached hereto as attachment A. The declaration and *Vaughn* Index are being provided to assist the Court and Plaintiff by explaining EOUSA's recordkeeping systems; the procedures used to search for, review, and process the responsive records; and the justifications for withholding records in full or in part.

**ADMINISTRATIVE HISTORY OF PLAINTIFF'S FOIA REQUEST**

5. EOUSA received a FOIA request from the Plaintiff on May 10, 2022. Plaintiff sought:

> *Any letter, memorandum, correspondence, or other writing requesting that special counsel be appointed to prosecuted crimes within the Western District of Michigan or explaining the basis for United States Attorney Mark Totten's recusal from any case, including, United States v Fox et al.*

2

*Any appointment letters or other documents which grant authority to Donald Daniels, Nils Kessler, or Christopher O'Connor to conduct criminal prosecutions in the Western District of Michigan pursuant to 28 USC §515.*
*Date Range for Record Search: From 04/01/2022 - To 05/10/2022*

I respectfully refer the Court to Plaintiff's FOIA request, attached hereto as attachment B, for a true and accurate statement of the contents of that FOIA request.

7. Each District maintains its own records; EOUSA does not maintain a centralized database. EOUSA determined that the only District with potentially responsive documents was the Western District of Michigan (USAO/MIW) because the request regarded only the United States Attorney in that District. EOUSA requested USAO/MIW conduct a search for potentially responsive records to Plaintiff's FOIA request. EOUSA also requested the General Counsel's Office (GCO) to perform a search because GCO typically handles matters of recusals and other ethical matters.

8. EOUSA sent Plaintiff an interim response on September 15, 2022, consisting of 11 pages released in full and 13 pages in released in part pursuant to exemptions (b)(5), (b)(6), and (b)(7)(c). EOUSA sent a final response on November 29, 2022, consisting of 7 pages withheld in full and 6 pages released in part pursuant to exemptions (b)(5), (b)(6), (b)(7)(a), (b)(7)(c), and (b)(7)(e). I respectfully refer the Court to EOUSA's response letters, attached hereto as attachment C, for a true and accurate statement of the contents of the letters.

**EOUSA RELEASED ALL REASONABLY SEGREGABLE, NONEXEMPT INFORMATION AND PROPERLY WITHHELD EXEMPT INFORMATION**

A. *FOIA Exemption (b)(5)*

9. Exemption (b)(5) protects "inter-agency or intra-agency memorandum or letters which would not be available by law to a party other than an agency in litigation with the agency." *See* 5 U.S.C. § 552(b)(5). The responsive materials include emails between the GCO,

3

USAO/MIW, and the Office of Deputy Attorney General (ODAG), in which GCO provides legal advice and analysis to both components. I reviewed the records and determined they contain information that is protected by both the attorney-client and deliberative process privileges.

10. *Attorney-Client Privilege* – The attorney-client privilege protects confidential communications between a client and her attorney relating to the matter for which the client has sought legal advice.

11. In this instance, DOJ, through USAO/MIW employees, sought and received legal advice from GCO. These communications included GCO interpretations and instructions about ethical matters.

12. Release of these records would divulge legal guidance provided by GCO to the USAO/MIW. The information withheld reflects essential attorney-client communications including legal analysis that exemption (b)(5) is meant to protect.

13. Finally, as it relates to information withheld pursuant to the attorney-client privilege, EOUSA has applied the foreseeable harm rationale that release information reflecting client confidences provided in the course of seeking legal advice, as well as the advice provided in response, would seriously disrupt and undermine the relationship of trust critical to attorneys when formulating legal advice for their clients.

14. *Deliberative Process Privilege* – The deliberative process privilege protects the internal deliberations of the government by exempting from release those recommendations, analyses, and discussions—both factual and legal—prepared to inform or in anticipation of decision-making. The integrity of the government's deliberative process, not just the documents themselves, is protected by this privilege.

15. The deliberative process privilege of exemption (b)(5) is meant to "prevent injury to the quality of agency decisions." *See, e.g.*, *NRLB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975). The rationale behind the privilege is to 1) encourage open, frank, discussions on matters of policy between subordinates and superiors; 2) protect against premature disclosure of proposed policies before they are actually adopted; and 3) protect against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's actions. The deliberative process privilege is intended to protect the decision-making processes of agencies from public scrutiny and enhance the quality of the decision.

16. The deliberative process privilege is asserted here to protect from disclosure internal communications between employees of USAO/MIW regarding ethics matters on ongoing public and nonpublic investigations or litigations.

17. It is reasonably foreseeable that disclosure of this information would harm the interest protected by exemption (b)(5). Disclosure of the information at issue would severely hamper the efficient daily workings of DOJ personnel who no longer feel free to seek legal advice or discuss their ideas and strategies in internal communications. Consequently, DOJ employees would be much more circumspect in their discussions with each other. This lack of candor would impair DOJ's ability to foster the forthright internal discussions necessary for efficient and proper decision-making.

18. Agencies may withhold factual material in an otherwise "deliberative" document where it is so thoroughly integrated with deliberative material that its disclosure would expose or cause harm to the agency's deliberations, or where the author of the document has selected specific facts out of a larger groups of facts. Accordingly, to the extent that information withheld

contains factual material, that information is inextricably intertwined with the deliberative nature of the records.

19. As it relates to material withheld pursuant to the deliberative process privilege, EOUSA is mindful, and has applied, the foreseeable harm policy rationales as underpinning the deliberative process privilege.

20. First, the privilege protects creative debate and candid consideration of alternatives within an agency, and, thereby, improves the quality of agency policy decisions. Second, it protects the public from the confusion that would result from premature exposure to discussions occurring before the policies affecting it had been settled upon. Third, it protects the integrity of the decision-making process itself by confirming that officials should be judged by what they decided, not for matters they considered before making up their minds.

21. The release of the information withheld under each category would harm one or more of these interests: by chilling the full and frank internal discussion of agency matters, by causing public confusion from releasing information that did not reflect final agency determinations, or by impairing the integrity of the decision-making process by revealing what an official considered before reaching a conclusion. Furthermore, if these predecisional, deliberative communications were to be publicly released, DOJ employees engaging in similar decision-making processes in the future would be much more cautious in their discussions with each other and in providing all pertinent information and viewpoints to agency decision-makers in a timely manner. This would seriously impair DOJ's ability to foster the forthright internal discussions necessary for efficient and proper decision-making. Finally, premature release of this pre-decisional, deliberative information would also cause public confusion as it would inaccurately suggest that these un-finalized discussions and drafts which are still

undergoing internal review, debate, and editing actually reflect DOJ's final positions or that DOJ relied on this information in formulating final decisions.

### B. *FOIA Exemption (b)(6) and (b)(7)(c)*

22. Exemption (b)(6) protects from disclosure records related to personnel, medical, and similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy. To determine whether exemption (b)(6) would protect the information in question from disclosure, the agency must determine whether 1) the information in question is contained in personnel, medical, or "similar" files, and 2) disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy by balancing the public's right to disclosure of the information against the individual's right to privacy.

23. In this instance, EOUSA is withholding DOJ employees' office numbers, cell phone numbers, names, and email.

24. Disclosure of the subjects of a criminal or civil investigations, the name of nonpublic EOUSA employees, and other personally identifiable information related to these individuals, could subject the individuals to an unwarranted invasion of their personal privacy by leading to efforts to contact them directly or subject them to harassment or harm. There is no countervailing public interest that warrants the release of the individuals' personally identifiable information, and its dissemination would not help explain the government's activities or operations. Accordingly, EOUSA has concluded that the need to protect the individuals' privacy rights far outweighs the public need for the disclosure of their personally identifiable information.

25. Similarly, exemption (b)(7)(C) protects personal information in criminal law enforcement records whose disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy. Consistent with the interpretation of exemption (b)(6), private

individuals and government personnel involved in criminal and civil investigations have substantial interests in avoiding the unnecessary disclosure of their information.

### C. FOIA Exemption (b)(7)(A)

26. Exemption (b)(7)(A) permits an agency to withhold records or information compiled for law enforcement purposes to the extent that production could reasonably be expected to interfere with enforcement proceedings. When determining whether exemption (b)(7)(A) applies, EOUSA considers 1) whether a law enforcement proceeding is pending or prospective, and 2) whether release of information could reasonably be expected to cause some articulable harm.

27. The information withheld in this instance relates to ongoing investigations, some of which have not yet been made public.

28. Releasing to Plaintiff information related to these specific ongoing investigations will cause the harm of prematurely alerting those that are being investigated to the specific nature of the investigation.

### D. FOIA Exemption (b)(7)(e)

29. Exemption (b)(7)(E) protects from disclosure information compiled for law enforcement purposes that would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions, where disclosure could risk circumvention of the law.

30. In this instance, exemption (b)(7)(e) was used to protect an intranet website addresses. If released, it risks circumvention of the law because it puts the site at higher risk for cyber-attack/hacking.

### *E. Segregation and Release of Non-Exempt Material*

31. Under FOIA, federal agencies are required to release any portion of the record that is non-exempt and that is reasonably segregable from the exempt material. If non-exempt information contained in the record is inextricably intertwined with exempt information, then reasonable segregation is not possible.

32. An agency may satisfy its segregability obligations by 1) providing an explanation that adequately describes each withheld document and the exemption under which it was withheld; and 2) submitting a declaration attesting that the agency released all segregable material.

33. I confirm that EOUSA released all segregable material. In reviewing the responsive material, EUOSA staff conducted a detailed, line-by-line review to satisfy EOUSA's reasonable segregability obligations, including evaluating all material under the foreseeable harm standard. 5 U.S.C. § 552(a)(8)(A). Any responsive material was either exempt itself or was so intertwined with non-exempt information that segregation of the non-exempt information was not reasonably possible without revealing exempt information or leaving nothing but meaningless words or sentence fragments.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.

Executed this 12th day of April 2023.

*Auborn Finney*
Auborn Finney
Attorney-Advisor
Executive Office for United States Attorneys
Freedom of Information/Privacy Act Staff